IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SARENA DANIEL**, <br><br> Plaintiff, <br><br> v. <br><br> **OREGON HEALTH & SCIENCES UNIVERSITY and DAVID SCOTT**, <br><br> Defendants. | Case No. 3:17-cv-542-SI <br><br> **OPINION AND ORDER** |

Micah D. Fargey, FARGEY LAW PC, 7307 SW Beveland Street, Suite 200, Portland, OR 97223. Of Attorneys for Plaintiff.

Karen O'Kasey and Drew L. Eyman, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Sarena Daniel filed this lawsuit in state court against her employer, Defendant Oregon Health & Sciences University ("OHSU"), and a supervisor at OHSU, Defendant David Scott ("Scott"). Plaintiff alleges that Scott sexually harassed her and that OHSU and Scott retaliated against her after she reported the alleged sexual harassment. Defendants removed the case to federal court and now move for summary judgment against all of Plaintiff's claims. Plaintiff concedes all of her claims except her claim for sexual harassment based on a hostile

PAGE 1 – OPINION AND ORDER

work environment against OHSU. For the following reasons, Defendants' motion against that claim is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

In August 2014, OHSU hired Plaintiff to work as a cashier in its Food & Nutrition Department. Scott trained Plaintiff during her initial probationary period, and she reported to him during that time. Almost immediately after Plaintiff went to work for OHSU, she was uncomfortable working with Scott. When Plaintiff began with OHSU, Scott was already involved in a sexual relationship with another OHSU supervisor, who was married. That sexual relationship was well known in the workplace.

PAGE 2 – OPINION AND ORDER

Scott sought to leverage his influence and position over Plaintiff to coerce her into a similar sexual relationship. Scott offered to engage in a sexual relationship with Plaintiff, to be her "sugar daddy," stating that he would be "nice" to her if she engaged in such a relationship. Plaintiff declined.

Scott continued to engage in inappropriate conduct with Plaintiff. He commented about how she looked, called her "sexy," noted that he wanted to see her in something other than her uniform, asked her what kind of underwear she was wearing, and asked her to "be his sweet candy." He also embraced her and when she pulled away and told him to stop, he responded that "no one will do anything" if he continued to touch her. Scott also drew a picture of women's underwear. While Plaintiff was looking at Facebook during her break, Scott tried to "zoom in" on a picture of Plaintiff and her breasts.

On one occasion Scott asked Plaintiff to "send him sexy pictures" of her naked. A few days later, on November 14, 2014, Scott invited Plaintiff to a supply room and indicated that he wanted to have sexual relations with Plaintiff in that room. They were interrupted by another co-worker, but later Scott asked Plaintiff about her "preferred" penis size, making hand gestures to mimic various lengths.

Plaintiff asked Scott to stop his inappropriate conduct, but he continued. He told Plaintiff that he "liked pussy" and he put his tongue between two fingers, mimicking oral sex. On another occasion he offered to send Plaintiff pictures of his genitals. It was Plaintiff's understanding that Scott had sent such pictures to other coworkers. Plaintiff was offended by Scott's conduct. Plaintiff did not engage in sexual jokes in the workplace, and it is contrary to her culture and her faith.

Plaintiff, however, did not formally complain about Scott's behavior until after she was no longer a probationary employee. On March 2, 2015, Plaintiff filed a complaint against Scott with OHSU's Action and Employment Opportunity Office ("AEOO"). OHSU placed Scott on leave while it conducted an investigation. OHSU concluded that Plaintiff's complaint could not be substantiated, but nevertheless OHSU transferred Scott away from working with Plaintiff. Shortly thereafter, OHSU reduced Plaintiff's hours.

Although Scott no longer works in close physical proximity to Plaintiff on a daily basis, he still comes to her work area from time to time. On July 21, 2015, Scott attempted to "run over" Plaintiff with a cart, prompting Plaintiff to file another complaint with the AEOO later that day. OHSU investigated Plaintiff's second complaint and again concluded that her complaint could not be substantiated. According to Plaintiff, OHSU responded to her new complaint by falsely accusing her of engaging in inappropriate behavior and by disciplining her. Scott continues to "leer and stare" at Plaintiff, making her uncomfortable.

## DISCUSSION

Defendants move for summary judgment against all of Plaintiff's remaining claims. Plaintiff concedes all of her claims against Scott individually, and her claims against OHSU under Oregon Revised Statutes § 659A.203, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1983. Plaintiff only disputes Defendants' motion with respect to Plaintiff's claim against OHSU under 42 U.S.C. §2000e-2(a), for discrimination on the basis of sex. Plaintiff alleges sexual discrimination in the form of sexual harassment based on a hostile work environment.

To establish a *prima facie* case for a hostile work environment claim, Plaintiff must show "that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M & O Agencies*,

PAGE 4 – OPINION AND ORDER

*Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). For the third prong, "[f]actors a court may consider are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 1056 n.2 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Because Plaintiff's only remaining claim is against OHSU, there is also the issue of OHSU's vicarious liability. The Court first addresses OHSU's vicarious liability.

## A. Vicarious Liability

"If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). However, "[a]n employer is vicariously liable for a hostile work environment created by a supervisor." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 689 (9th Cir. 2017). A supervisor is someone who the employer has empowered "to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 570 U.S. at 431 (quoting *Ellerth*, 524 U.S. at 761).

If the victim suffered a "tangible employment action," such as firing, demotion, or other significant change in employment status, the employer is strictly liable for the supervisor's harassment. *Id.* at 424. If the victim suffered no tangible employment action, the employer may assert a two-pronged affirmative defense, sometimes referred to as the "reasonable care" or "*Farragher/Ellerth*" defense.[1] *Id.* To sustain this affirmative defense, an employer must show by a preponderance of the evidence both: "(a) that the employer exercised reasonable care to

---

[1] This defense arises from the Supreme Court cases of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.

Defendants assert that Scott was never Plaintiff's supervisor. The only evidence Defendants offer in support of this contention is Scott's deposition testimony that at some point when he was a supervisor of the North Pavilion location, Plaintiff was working as a relief employee and would fill in for employees at the North Pavilion who were out sick. ECF 21-13 at 2:10-25. Scott testified that he had an "indirect" working relationship with Plaintiff because "supervisors are not responsible for relief duties." *Id.* When asked who is responsible for relief duties, Scott responded "Paul Southerton, if she was relief at that time." *Id.*

Scott's position at OHSU was a Food and Nutrition Retail Supervisor. ECF 21-9. Scott's testimony is not particularly clear, nor does it definitely answer whether Scott, a supervisor in the department in which Plaintiff worked, could have made a decision that caused a significant change in Plaintiff's work status. There is no evidence of where Scott is in the chain of command with respect to Plaintiff, such as a supervisor over Plaintiff's purported supervisor. There is no evidence regarding whether Scott, as a supervisor, could have caused a change in Plaintiff's status by making a negative report to Plaintiff's supervisor or to human resources. Moreover, Plaintiff asserts that in the beginning of her work at OHSU she was trained by Scott, had a supervisory relationship with Scott, and he made it clear he could tell her what to do. Scott's deposition testimony does not specifically refute Plaintiff's declaration. Nor does Scott's testimony refute that during Plaintiff's probationary period, the relevant time, he could have caused a major change in Plaintiff's status by making a negative report about her performance and causing her not to be hired as a permanent employee. Accordingly, there is an issue of fact

PAGE 6 – OPINION AND ORDER

about whether Scott was Plaintiff's supervisor for purposes of Title VII during the relevant period.

## B. Plaintiff's *Prima Facie* Case

Defendants also argue that Plaintiff fails to make a *prima facie* case because the conduct was not sufficiently severe or pervasive. Defendants assert that Scott only worked with Plaintiff for several days and the alleged conduct only occurred intermittently over a period of seven months, and thus is insufficient. The Court disagrees.

Although Scott disputes the alleged conduct, and Defendants argue that Plaintiff's assertions before the Court differ from her assertions in the complaint lodged with OHSU, those are factual disputes for a jury to decide. On summary judgment, the Court views the facts in the light most favorable to the non-moving party. Plaintiff testifies in her declaration to egregious behavior of a sexual nature that was humiliating. Additionally, a reasonable jury could find this conduct physically threatening or that it would unreasonably interfere with an employee's work performance. Thus, the conduct alleged by Plaintiff is sufficient to raise a genuine dispute of material fact about whether it was sufficiently severe or pervasive to make a *prima facie* case for hostile work environment. *See, e.g.*, *Chastain v. Cam*, 2016 WL 1592712, at *8 (D. Or. Apr. 20, 2016) (finding an issue of fact precluding summary judgment where the alleged harasser made sexual comments, told dirty jokes, commented about the need to "get laid every day" and his wife's lack of skill at oral sex, commented about the breast size of coworkers, and suggestively rubbed his genitals).

## C. Reasonable Care Affirmative Defense

Defendants also argue that they are entitled to summary judgment based on the reasonable care affirmative defense. The Court finds that Defendants have established the first prong of this affirmative defense. After Plaintiff complained, OHSU promptly put Scott on leave,

PAGE 7 – OPINION AND ORDER

investigated the complaint, and separated Plaintiff and Scott from working together. Plaintiff also testified that Scott stopped his sexual comments and physical touching after Plaintiff complained to the AEOO. Although Plaintiff asserts that Scott scowls, leers, and stares at Plaintiff, she provides no legal authority holding that scowling, leering, and staring is sufficiently harassing behavior to support a hostile work environment. Nor did Plaintiff complain to OHSU that Scott was continuing to harass her by staring and leering. The Court acknowledges that Plaintiff may have considered any further complaints to be futile, because her two previous complaints were found to be unsubstantiated and Plaintiff believed herself to have been unreasonably disciplined after complaining. Regardless, the Court finds that scowling, staring, and leering, without more, is insufficient conduct under the facts of this case to constitute a hostile work environment. Thus, OHSU exercised reasonable care to prevent and correct Scott's alleged sexually harassing behavior.

With regard to the second prong, however, the Court finds Plaintiff has established a genuine issue of material fact. Defendants argue that Plaintiff unreasonably waited for several months before complaining to OHSU about Scott's behavior. Under the circumstances of this case, however, the Court finds it to be a question for the jury about whether Plaintiff's delay in reporting was unreasonable.

Plaintiff was warned by other coworkers that Scott was having a sexual relationship with another supervisor at OHSU. This purported affair was thus a fairly well known fact, or at least a well-spread rumor. Scott also bragged that nothing would happen to him if Plaintiff complained. Further, Plaintiff was a new employee who was on probation, and Scott was training her and a supervisor in her department. A reasonable jury may consider to be reasonable Plaintiff's decision to wait to complain about Scott until after Plaintiff had completed her probationary

period of employment and the power dynamic between Plaintiff and Scott would not be so unbalanced.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF 20) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to all of Plaintiff's claims except her claim for discrimination on the basis of sex.

**IT IS SO ORDERED**.

DATED this 16th day of August, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge